UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA STATTON,

    Plaintiff,

v.                                Case No. 8:18-cv-2345-T-60SPF

MARK D. KISER, DEPUTY SHERIFF
J. SMITH, DEPUTY BASS, UNNAMED
DEPUTIES ON DUTY, CHAD CHRONISTER,
as SHERIFF FOR HILLSBOROUGH
COUNTY, PAT FRANK, RONALD
FICAROTTA, THIRTEENTH JUDICIAL
CIRCUIT, and unknown DOES,

    Defendants.
_____/

## **ORDER DENYING PLAINTIFF'S MOTIONS FOR DISQUALIFICATION**

This matter is before the Court on Plaintiff Joshua Statton's *pro se* "First Motion to Disqualify Judge Thomas Barber," filed on August 6, 2019. (Doc. # 67). On August 8, 2019, Defendants Chad Chronister, as Sheriff for Hillsborough County, Deputy Sheriff J. Smith, and Unnamed Deputies on Duty, filed an objection to the Motion to Disqualify. (Doc. # 68). On October 4, 2019, Mr. Statton filed his "Motion for Ruling on Plaintiff's Motion to Disqualify and Supplement to Motion to Disqualify" (Doc. # 70), containing new allegations to arguing for disqualification.[1] On November 17, 2019, Mr. Statton filed a "Second Supplement in Support of Motion to Disqualify Judge Thomas Barber" (Doc. # 71), again containing new

---

[1] The Court notes that Mr. Statton did not seek leave of the Court to file a supplemental motion in violation of Local Rule 3.01(c). Mr. Statton also failed to adequately confer with the other parties prior to filing several of the motions in violation of Local Rule 3.01(g).

allegations. After reviewing the motions, objection, court file, and the record, the Court finds as follows:

## **Legal Standard**

The Court addresses Mr. Statton's arguments under 28 U.S.C. § 455.[2] The standard for recusal is "whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986); *see also Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000); *In re Ford*, Case No. 8:18-cv-2053, 2018 WL 7360654, at *1 (M.D. Fla. Oct. 11, 2018). "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise." *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) (citation omitted).

Although federal judges have a duty to recuse themselves when a disqualifying factor comes to light, a judge also has a duty to retain a case when faced with a meritless recusal motion. *See In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."). This is "because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially

---

[2] Although Mr. Statton attempts to file his second disqualification motion (Doc. # 71) pursuant to 28 U.S.C. § 144 (in part), the affidavit is woefully inadequate. The affidavit only contains three statements that are either legal conclusions or otherwise fail to establish any basis for disqualification.

manipulating the system for strategic reasons perhaps to obtain a judge more to their liking." *In re Allied–Signal Inc.,* 891 F.2d 967, 970 (1st Cir. 1989); *see Greenough*, 782 F.2d at 1558 (explaining twin policies of the § 455(a) standard).

Under the federal disqualification procedure, a judge does not and should not accept as true the allegations or speculation of the moving party. *See, e.g.*, *Greenough*, 782 F.2d at 1558; *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976); *United States v. Platshorn*, 488 F. Supp. 1367, 1368-69 (S.D. Fla. 1980). This is very different from the disqualification procedure that currently exists in the Florida state courts where judges are required to accept all allegations as true and are prohibited from identifying and rejecting allegations that are misleading, inaccurate, or outright false. Under the Florida state court disqualification procedure, unscrupulous parties are free to abuse and manipulate the system to obtain a judge more to their liking simply by filing an affidavit containing demonstrably false allegations. The federal disqualification procedure operates differently. *See Greenough*, 782 F.2d at 1558 ("If a party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal.")

Nonetheless, in federal courts "the judge must still tread cautiously, recognizing, on the one hand, the great importance of the judicial institution of avoiding any appearance of partiality, while simultaneously remaining aware of the potential injustices that may arise out of unwarranted disqualification." *In re Allied–Signal Inc.,* 891 F.2d at 970. "A judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous

speculation." *Harris v. Geico Gen. Ins. Co.*, 961 F. Supp. 2d 1223, 1227-28 (S.D. Fla. 2013) (quoting *Carter v. West Pub. Co.,* No. 99–11959–EE, 1999 WL 994997, at *2 (11th Cir. Nov. 1, 1999)).

## Analysis

*First Motion For Disqualification (Doc. # 67)[3]*

In his first motion for disqualification, filed on August 6, 2019, Mr. Statton alleges he is the president of a non-profit organization that engaged in various activities opposing my appointment to the federal bench. He also alleges that he submitted a FOIA request to the now defunct Federal Judicial Nominating Commission in an attempt to obtain a copy of the application I submitted to that body, and he ultimately filed suit in the Middle District of Florida to compel disclosure of that application. This action was dismissed due to lack of subject matter jurisdiction, and the appeal is currently pending before the Eleventh Circuit Court of Appeal.

Upon careful consideration, the Court finds that disqualification is not warranted in these circumstances. This is not the first time a case of this nature has come before the federal courts. In *DeNardo v. Municipality of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992), the plaintiff actively opposed the judge's judicial appointment by sending a letter to the Senate Judiciary Committee. The Ninth Circuit Court of Appeal held that disqualification was not necessary, explaining that "[s]uch a letter is probative of [the plaintiff's] dislike for [the judge], not the

---

[3] Plaintiff styled this motion as "First Motion to Disqualify Judge Thomas Barber."

other way around." That is precisely the case here. I have never met Mr. Statton, nor have I ever presided over a case where he was a party in my prior position as a state court judge. His efforts in connection with my judicial appointment were of no consequence and immediately recognized by everyone involved in the process for what they were – a poorly-disguised attempt by his employer, convicted felon Christina Paylan, to retaliate against me for sentencing her to jail in 2014, when I presided over her criminal trial as a state court circuit judge. That 364-day jail sentence resulted from a jury verdict finding her guilty of two separate felony crimes, each punishable by up to five years in prison (Obtaining a Controlled Substance by Fraud, and Fraudulent Use of Personal Information).[4]

It is common for convicted felons to blame the presiding judge in their cases for their predicaments. And it is not unusual for disgruntled criminals to attempt to retaliate in various ways against the judges that sentence them. It is well-established that a judge's adverse prior decisions, including sentencing a defendant

---

[4] Although Mr. Statton is the named plaintiff in the action presently before this court, there is no question that Ms. Paylan is deeply involved. Ms. Paylan's involvement is made plain by Mr. Statton's "First Motion to Disqualify Judge Thomas Barber " (Doc. # 67) and his "Second Supplement in Support of Motion to Disqualify Judge Thomas Barber" (Doc. # 71). As will be explained in footnote 6 below, the "non-profit organization known as Florida for Transparency" is the alter ego of Ms. Paylan. Indeed, the matter currently before this Court arises, indirectly, from her state court criminal case (*State v. Paylan*, 2014-CF-005764), where Ms. Paylan was convicted by a jury of the two felony crimes previously mentioned. Although Mr. Statton's second amended complaint does not mention Ms. Paylan by name, or the reason he was at the Hillsborough County Courthouse, it should be noted that the incidents described in the second amended complaint occurred in 2018 in connection with Ms. Paylan's post-conviction criminal proceedings that were pending, at that time, before Judge Mark Kiser. That fact is established by an affidavit of Mr. Statton that Ms. Paylan filed in her criminal case (attached hereto as Exhibit A) wherein Mr. Statton stated, under oath, in paragraph two, "*I am employed by Dr. Paylan. I deliver papers to the courthouse as requested by Dr. Paylan.*" (emphasis added). Courts may take judicial notice of publicly filed documents, such as those in state court litigation. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

to jail or prison, do not require disqualification in subsequent cases. *See, e.g.*, *Christo v. Padgett*, 223 F.3d 1324, 1334 (11th Cir. 2000) (holding that a district court judge's prior sentencing of a civil plaintiff in a criminal proceeding, and the fact that the judge presided over other litigation involving the civil plaintiff's family, did not require disqualification from the civil action).

Moreover, parties sometimes conduct themselves in a manner that "predictably engender[s] a judge's animus, but such behavior does not trigger the need for disqualification. To hold otherwise would be to create an opportunity for parties to exhibit hostile behavior strategically, as a means to force disqualification." Charles Gardner Geyh, Fed. Judicial Ctr., *Judicial Disqualification: An Analysis of Federal Law* 46 (Markarian 2d ed. 2010). In this case, Mr. Statton's own public hostility counsels against disqualification, "lest we encourage tactics designed to force recusal." *See United States v. Bertoli*, 40 F.3d 1384, 1414 (3d Cir. 1994); *In re Kozich*, 534 B. R. 427, 429 (S.D. Fla. Bankr. 2015). "Forcing judges to recuse because a litigant has criticized the judge would give litigants veto power over judges and allow forum shopping. It would also stretch the recusal statutes far beyond their intended purpose and potentially force disqualifications in a large number of cases." *Salt Lake Trib. Pub. Co., LLC v. AT&T Corp.*, 353 F. Supp. 2d 1160, 1176 (D. Utah 2005).

As an additional argument in support of his disqualification request, Mr. Statton cites to the fact that he has filed a FOIA action seeking a copy of my application to the Federal Judicial Nominating Commission. However, this does

not require my disqualification. "[A] judge is not disqualified merely because a litigant sues or threatens to sue him." *In re Bush,* 232 F. App'x 852, 854 (11th Cir. 2007) (quoting *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977)); *accord United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986); *see Cuyler v. Aurora Loan Servs. Inc.*, No. 12-11824-DD, 2012 WL 10488184, at *1 (11th Cir. Dec. 3, 2012). The connection to a lawsuit or threatened suit is even more tenuous here, where I am not even a named party to the actions.

***Second Motion For Disqualification and Supplement (Doc. # 70 & 71)[5]***

In his second motion for disqualification, filed on October 4, 2019, Mr. Statton raises various additional grounds, including: (1) a claim I am a material witness in this action; (2) I have a "mentor-student relationship" with Judge Mark Kiser, a Defendant in this action; (3) I exhibited bias when moderating a panel by not selecting a question submitted by Mr. Statton; (4) I am friends with John Kynes (a non-party and non-witness to this action); (5) I, as well as my children, attended Jesuit High School, and share a "special allegiance" with Judge Kiser and John Kynes, who also attended Jesuit High School and have children that attend the school; and (6) I caused Mr. Statton and Ms. Paylan to be trespassed from the

---

[5] Plaintiff styled these motions as "Motion for Ruling on Plaintiff's Motion to Disqualify and Supplement to Motion to Disqualify" (Doc. # 70) and "Second Supplement in Support of Motion to Disqualify Judge Thomas Barber" (Doc. # 71).

Hillsborough County Bar Association's building.[6]  None of these claims require disqualification.

A material witness is "a witness who gives testimony going to some fact affecting the merits of the cause and about which no other witness may testify." *Callahan v. Campbell*, 427 F.3d 897, 919 (11th Cir. 2005) (internal citation and quotation omitted).  I have no such information or knowledge and I am not a material witness in this action.  "Unsubstantiated speculation about the possibility that the judge will be required to be a material witness concerning a disputed issue is not enough to require recusal." *United States v. Fletcher*, No. 3:09-00243, 2013 WL 3728792, at *5 (M.D. Tenn. July 2, 2013) (quoting *United States v. Salemme*, 164 F. Supp. 2d 86, 111 (D. Mass. 1988)).

One of the Defendants in this action, Judge Mark Kiser, and I were previously colleagues during the time we both served as Circuit Judges in the Thirteenth Judicial Circuit.  Mr. Statton's claims that a "mentor-student relationship" exists and that Judge Kiser is my "protégé and close personal friend"

---

[6] Based on the materials Mr. Statton attached to his "Second Supplement in Support of Motion to Disqualify Judge Thomas Barber" (Doc. # 71), it appears that he and Ms. Paylan formed an entity named "Florida For Transparency, Inc." and, through that entity, joined the Hillsborough County Bar Association as affiliate members. According to the official records of the Florida Secretary of State (attached hereto as Exbibit B), the incorporator of "Florida For Transparency, Inc." was Ms. Paylan. Apparently, under the auspices of "Florida For Transparency, Inc.," Mr. Statton and Ms. Paylan attended meetings of the Hillsborough County Bar Association – until their membership was terminated and they were trespassed from the Bar Association's property on or about October 17, 2019.

are pure fiction. Judge Kiser and I were work colleagues and nothing more.

Acquaintance with a party is rarely a basis for compelled disqualification. *See, e.g.*, *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997); *Parrish v. Board of Com'rs of Alabama State Bar*, 524 F.2d 98, 102 (5th Cir. 1975); *see also Carter v. West Pub. Co.*, No. 99-11959-EE, 1999 WL 994997, at *5 (11th Cir. Nov. 1, 1999). As the Seventh Circuit has explained:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer.

*United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985). Judge Kiser and I previously worked in the same building and shared the same job title. Although we had a cordial, professional relationship, no reasonable person would find anything even remotely close to a "mentor-student relationship" existed. As such, Mr. Statton has failed to identify the type of extensive personal contacts that would warrant disqualification.

The remainder of the grounds alleged by Mr. Statton in his second motion for disqualification do not merit further comment as none of them rise to the level requiring disqualification, even if true.[7]

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1) Mr. Statton's "First Motion to Disqualify Judge Thomas Barber" (Doc. # 67) is hereby **DENIED**.

2) Mr. Statton's "Motion for Ruling on Plaintiff's Motion to Disqualify Judge and Supplement to Motion to Disqualify" (Doc. # 70) is hereby **DENIED**.

3) Mr. Statton's "Second Supplement in Support of Motion to Disqualify Judge Thomas Barber" (Doc. # 71) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 20th day of December, 2019.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

---

[7] Various allegations are demonstrably false. For example, neither I nor any of my children ever attended Jesuit High School – certainly not my daughter (Jesuit High School is an all-male institution). Mr. Statton's claim that I somehow deliberately failed to ask a written question he submitted at a Hillsborough County Bar Association Bench Bar Conference I moderated is similarly false. All the written questions submitted to me as the moderator were anonymous – I could not have deliberately failed to ask his question even if I had wanted to do so.